IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 10-cv-01094-BNB

LARRY ELEVTHERIOS JOHNSON,

        Plaintiff,

v.

ABIGAIL PILMENSTEIN,
JAMAL WARD, Judicial Affairs Officer at University of Colorado at Boulder,
LESLIE MORRIS, Judicial Affairs Officer at University of Colorado at Boulder,
JOHN DOE, Supervisor 2008-2009, University of Colorado at Boulder, Police,
BRUCE, Campus Police Officer # 1,
BROWN, Campus Police Officer # 2,
JOHN DOE STUDENT # 1, of the University of Colorado at Boulder, sanctioned
Student "Peer" protection group,
JANE DOE STUDENT SUPERVISOR # 1, of the University of Colorado at Boulder
sanctioned Student "Peer" protection group,
ALL JOHN AND JANE DOES, of the Colorado Branch of MESA (Movement to End
Sexual Assault),
ALL JOHN AND JANE DOES, of MESA (Movement to End Sexual Assault) throughout
the United States,
MESA (Movement to End Sexual Assault), and
JANE DOE PROSECUTOR, Boulder District Attorney's Office,

        Defendants.

F I L E D
UNITED STATES DISTRICT COURT
DENVER, COLORADO

OCT 1 8 2010

GREGORY C. LANGHAM
CLERK

---

## ORDER OF DISMISSAL

---

Plaintiff, Larry Elevtherios Johnson, initiated this action by filing a *pro se*

Complaint and Motion and Affidavit for Leave to Proceed Pursuant to 28 U.S.C. § 1915

on May 3, 2010. He has been granted leave to proceed *in forma pauperis*.

On June 21, 2010, Magistrate Judge Craig B. Shaffer determined that the

Complaint was deficient because Mr. Johnson was suing improper parties and because

he failed to allege the personal participation of each named Defendant. Accordingly, Mr. Johnson was directed to file an Amended Complaint, which he submitted to the Court on July 21, 2010.

On August 10, 2010, Magistrate Judge Boyd N. Boland determined that the Amended Complaint was deficient because it did not comply with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. Magistrate Judge Boland further noted that Mr. Johnson was suing improper parties. Accordingly, Mr. Johnson was directed to file a Second Amended Complaint, which he submitted to the Court on September 9, 2010.

The Court must construe the Second Amended Complaint liberally because Plaintiff is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). If the Second Amended Complaint reasonably can be read "to state a valid claim on which the plaintiff could prevail, [the Court] should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall*, 935 F.2d at 1110. However, the Court should not act as an advocate for a *pro se* litigant. *See id.*

Mr. Johnson has been granted leave to proceed pursuant to the federal *in forma pauperis* statute, 28 U.S.C. § 1915. Subsection (e)(2)(B) of § 1915 requires a court to dismiss *sua sponte* an action at any time if the action is frivolous, malicious, or seeks monetary relief against a defendant who is immune from such relief. A legally frivolous claim is one in which the plaintiff asserts the violation of a legal interest that clearly does

not exist or asserts facts that do not support an arguable claim. ***Neitzke v. Williams***,

490 U.S. 319, 324 (1989). For the reasons set forth below, the Second Amended

complaint and the action will be dismissed as legally frivolous.

In the Second Amended Complaint, Mr. Johnson brings eight claims for relief.

Mr. Johnson asserts jurisdiction pursuant to 42 U.S.C. §§ 1981, 1983 and 1985, as well

as supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367. As

background for his claims, Mr. Johnson alleges that he was admitted to the University

of Colorado at Boulder in August 2008 in order to pursue a second bachelors degree.

Second Amended Complaint at 3. He asserts that he "came to be aware that a

shadowy group, at first mainly un-enrolled adults, then later students of the campus,

were engaged in a clandestine operation to thwart Plaintiff's socio-sexual life." ***Id.*** Mr.

Johnson alleges that he filed several complaints with the University of Colorado police

and other university officials, but that they failed to investigate the activities of the

"shadowy group" that was allegedly harassing him. ***Id.*** at 3-5. Finally, he asserts that,

after Defendant Abigail Pilmenstein filed a charge of "Unwanted Sexual Contact"

against him, he was arrested and incarcerated. ***Id.*** at 5. He alleges that following a jury

trial in the Boulder district court, he was found not guilty of the charge. ***Id.*** at 6.

However, he asserts that Defendant Pilmenstein is a member of a group called

Movement to End Sexual Assault (MESA), and that she and MESA, also named as a

defendant, have continued to harass him in the name of their "sexual assault prevention

activities." ***Id.***

In his first claim, Mr. Johnson asserts that Defendants Judicial Affairs Officer

Jamal Ward, Judicial Affairs Officer Leslie Morris, John Doe Campus Police Supervisor, and Campus Police Officers Bruce and Brown (collectively, the "University Defendants") violated his rights under 42 U.S.C. §§ 1981 and 1983 to "engage in school and social activities that could lead to martial [sic] contract in the same fashion of persons of the White Race by . . . allowing MESA a non-campus activist group . . . to engage in an activity of so-called sexual assault prevention within the Plaintiff's physical presence . . . ." Second Amended Complaint at 7-8. He alleges that Defendant MESA was permitted to remove "persons of the female sex from his proximity while he studied in the Libraries of the University," which Mr. Johnson believes caused him to be branded as a sexual offender. *Id.* at 8. Mr. Johnson asserts that these activities were based on his age and race. An exhibit attached to the Second Amended Complaint shows that Mr. Johnson was born on December 1, 1960 and that he is African-American. *Id.* at 18.

Mr. Johnson asserts a claim pursuant to § 1981, which "prohibits racial discrimination in 'the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'" *Reynolds v. Sch. Dist. No. 1, Denver, Colorado*, 69 F.3d 1523, 1532 (10th Cir. 1995) (quoting 42 U.S.C. § 1981). To prove a claim under section 1981, a plaintiff must show "(1) that [he] is a member of a protected class; (2) that the defendants had the intent to discriminate on the basis of race, and (3) that the discrimination interfered with a protected activity as defined in § 1981." *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1102 (10th Cir. 2001). "By its language, Section 1981 establishes four protected interests: (1) the right to make and enforce

contracts; (2) the right to sue, be parties, and give evidence; (3) the right to the full and equal benefit of the laws; and (4) the right to be subjected to like pains and punishments." *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1267 (10th Cir. 1989). Here, Mr. Johnson asserts that his right to enter into a "marital contract" was violated. Second Amended Complaint at 7. However, the Tenth Circuit has held that a cognizable claim under section 1981 in which the plaintiff asserts interference with the right to make and enforce contracts must involve "*actual* loss of employment or other contract interests" as opposed to "*possible* loss of future opportunities." *Id.* (emphasis in original).

Mr. Johnson merely asserts that he has been deprived of the right to "engage in school and social activities that *could* lead to [marital] contract . . . ." Second Amended Complaint at 7. This is the type of "vague and conclusory allegation" that the Tenth Circuit has found "insufficient to state a deprivation of a right to make and enforce contacts that is protected by Section 1981." *Id.* That is, Mr. Johnson "has the same right as others to enter into [a marital] contract with those who wish to contract with him. Even if the state has defamed him and thus arguably made him less attractive to some who otherwise might want to contract with him, the defamation does not deny him the basic *right* to contract." *Id.* (citing *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989) (holding that Section 1981's contract clause protects only the right to enter into and enforce contracts)). According, Mr. Johnson cannot maintain a claim for relief under § 1981.

With respect to Mr. Johnson's claim that these Defendants violated his rights

under section 1983, it is essential that a § 1983 plaintiff establish that he was "deprived of a right secured by the Constitution or the laws of the United States, and that the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). The Due Process Clause of the Fourteenth Amendment provides that no state shall deprive any person of liberty without due process of law. The Supreme Court has held that the liberty protected thereunder includes the right to marry. *See, e.g., Meyer v. Nebraska*, 262 U.S. 390, 399 (1923); *Cleveland v. Bd. of Educ. v. LaFleur*, 414 U.S. 632, 639-40 (1974).

However, it is not clear in this case how Mr. Johnson's right to marry is being invaded by the University Defendants. Mr. Johnson does not allege that he is married to someone of a different race or that he has been denied any right guaranteed in the United States Constitution based on this marital contract. Instead, he appears to assert that he may like to marry someone of a different race but that the University Defendants have somehow prevented or thwarted this theoretical marriage. Mr. Johnson cites no cases, and the Court's research has revealed none, in which a plaintiff can maintain a claim under section 1983 based on such facts. Indeed, cases exist where a plaintiff brings suit under section 1983 alleging that he or she has been denied a constitutional right based upon his or her marriage to a person of a different race, *see, e.g., Gresham v. Waffle House, Inc.*, 586 F.Supp. 1442, 1443 (N.D. Ga. 1984) (finding that various civil rights statutes prevent discrimination on the basis of interracial marriage), but Mr. Johnson does not present such a situation in this case. Mr. Johnson's confusing and vague allegation that the University Defendants have allowed members

6

of MESA to remove unidentified females from his presence while he was studying in the library does not demonstrate that his right to marry has been infringed by the state. Accordingly, Mr. Johnson cannot maintain a claim for relief under § 1983.

In his second claim, Mr. Johnson alleges that Defendant All John and Jane Does of the Colorado Branch of MESA, Defendant All John and Jane Does of MESA throughout the United States, and Defendant MESA (collectively, the "MESA Defendants") engaged in a conspiracy to violate his civil rights with the University Defendants in violation of 42 U.S.C. § 1985. He alleges, *inter alia*, that these Defendants

> associat[ed] Plaintiff's reputation to the name MESA among third parties in secret, so that by stint of that association alone, having no proof that Plaintiff ever in his life committed a sexual assault, violat[ed] Plaintiff's right to pursue happiness through marital contact; with daily impunity from September 2008 – April 2010, defendants engaged in this activity of so-called sexual assault prevention within the Plaintiff's physical presence, in public before third party members of the community, by removing persons of the female sex from his proximity, making the direct insinuation in the public eye, that Plaintiff was a potential sexual offender or sexual assaulter . . . .

Second Amended Complaint at 9.

Mr. Johnson appears to premise his conspiracy claim on Section 1985(3). "The essential elements of a § 1985(3) claim are: (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993). Furthermore, § 1985(3) applies only to conspiracies motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). Conclusory allegations

7

that the defendants acted in concert or conspired, without specific factual allegations to support such assertions, are insufficient to state a claim under § 1985(3). *See Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1126 (10th Cir. 1994) ("A plaintiff must allege, 'either by direct or circumstantial evidence, a meeting of the minds or agreement among the defendants' . . . more than mere conclusory allegations are required to state a valid claim . . . ."). That is, section 1985(3) conspiracy claims cannot stand on "vague and conclusory allegations"; instead, they "must be pled with some degree of specificity." *O'Connor v. St. John's College*, 290 F. App'x 137, 141 (10th Cir. Aug. 18, 2008) (unpublished opinion) (citing *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007)).

Here, Mr. Johnson's allegations are insufficient to sustain a claim under Section 1985(3). He presents nothing more than a conclusory allegation of conspiracy, lacking any underlying facts. The Second Amended Complaint fails to state specifically how the University Defendants acted in concert with the MESA Defendants or when and how they allegedly conspired to commit unconstitutional acts. At most, Mr. Johnson has alleged that the University Defendants had knowledge of his belief that the MESA Defendants were harassing him. However, this allegation does not lead to the conclusion that the University Defendants acted "in concert" or "conspired" with the MESA Defendants. *See, e.g., Hauptmann v. Wilentz*, 570 F.Supp. 351, 390 (D. N.J. 1983) (holding that a defendant's mere knowledge of alleged violations, even when coupled with allegations of failure to take any action, is insufficient by itself to please joint participation in a conspiracy). Mr. Johnson has not specifically presented any facts

8

tending to show agreement and concerted action; "[a]t best, he has merely alleged rank speculation and innuendoes, which are not sufficient to state a claim [under § 1985(3)]." *Harrington v. Wilson*, 2006 WL 2724094, at *13 (D. Colo. Sept. 21, 2006) (unpublished opinion). Accordingly, he cannot maintain a claim for relief under § 1985(3). *See Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006) (holding that "[c]onclusory allegations . . . without any supporting facts are insufficient . . . ."); *see also Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989) (plaintiff must provide "specific facts showing agreement and concerted action" to sustain civil rights conspiracy claim).

In his third claim, Mr. Johnson asserts that Defendant Pilmenstein engaged in a conspiracy with the MESA Defendants to violate his civil rights when she "knowingly [brought] a false charge of sexual contact against Plaintiff . . . ." Second Amended Complain at 10-11. However, these claims against the MESA Defendants and Defendant Pilmenstein are not asserted properly pursuant to § 1983 because Mr. Johnson does not demonstrate that these Defendants were acting under color of state law.

"Section 1983 provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). "[T]he purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). "[T]he under-color-of-state-law element of § 1983 excludes from its reach

merely private conduct, no matter how discriminatory or wrongful." **Sullivan**, 526 U.S. at 50 (internal quotation marks omitted). The only proper defendants in a § 1983 action are those who "'represent [the state] in some capacity, whether they act in accordance with their authority or misuse it.'" **NCAA v. Tarkanian**, 488 U.S. 179, 191 (1988) (quoting **Monroe v. Pape**, 365 U.S. 167, 172 (1961)).

Private conduct constitutes state action, however, if it is "fairly attributable to the State." **Lugar v. Edmondson Coal Co.**, 457 U.S. 922, 937 (1982). This requirement is satisfied if two conditions are met: (1) "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible" and (2) the private party charged with the deprivation "must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he acted together or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." **Lugar**, 457 U.S. at 937.

Mr. Johnson argues that Defendant Pilmenstein and the Mesa Defendants are state actors because they were "being aided and abetted by State Officers, encouraged by them, . . . and with these State officials encouragement, [they] did use the Lawful Court System to make the charges [they] knew were false . . . ." Second Amended Complaint at 11. Here, Mr. Johnson appears to allege that Defendant Pilmenstein and the MESA defendants engaged in a conspiracy with the Boulder District Attorney's Office and the University Defendants to bring a charge of "unwanted sexual contact" against him. *Id.* However, "[w]hen a plaintiff in a § 1983 action attempts to assert the

necessary 'state action' by implicating state officials or judges in a conspiracy with private defendants, mere conclusory allegations with no supporting factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action." *Scott v. Hern*, 216 F.3d 897, 907 (10th Cir. 2000) (internal quotation marks omitted). Such facts are conspicuously absent from Mr. Johnson's second amended complaint. Accordingly, Mr. Johnson has not demonstrated that the deprivation of which he complains was caused by "a person who may fairly be said to be a state actor" because he has failed to demonstrate that Defendant Pilmenstein and the MESA defendants "acted together or . . . obtained significant aid from state officials, or [that their] conduct is otherwise chargeable to the State." *Lugar*, 457 U.S. at 937. Therefore, Mr. Johnson may not maintain a claim under § 1983 against these Defendants.

Mr. Johnson appears to assert a claim against Jane Doe Prosecutor of the Boulder District Attorney's Office based on her involvement with his criminal prosecution in the District Court for Boulder County, Colorado. *See* Second Amended Complaint at 2. However, a prosecutor acting within the scope of her duties enjoys absolute immunity from suit under § 1983. *Imbler v. Pachtman*, 424 U.S. 409, 424 (1976). Prosecutors are provided absolute immunity because exposing them to § 1983 lawsuits springing from their official activities "would divert '[their] energy and attention . . . from the pressing duty of enforcing the criminal law.'" *Grant v. Hollenbach*, 870 F.2d 1135, 1139 (6th Cir. 1989) (quoting *Imbler*, 424 U.S. at 430-31)). In addition, "[a]bsolute prosecutorial immunity is not defeated by a showing that the prosecutor

acted wrongfully or even maliciously, or because the criminal defendant ultimately prevailed on appeal or in a habeas corpus proceeding." *Grant*, 870 F.2d at 1138 (citation omitted). Nonetheless, prosecutorial immunity does not generally extend to "those aspects of the prosecutor's responsibility that cast [her] in the role of an administrator or investigative officer rather than that of advocate." *Imbler*, 424 U.S. at 430-31.

Here, Mr. Johnson's allegations against Defendant Jane Doe Prosecutor involve no more than acts that are "'intimately associated with the judicial process' such as initiating and pursuing a criminal prosecution." *Snell v. Tunnell*, 920 F.2d 673, 686 (10th Cir. 1990) (quoting *Imbler*, 424 U.S. at 430), *cert. denied sub nom. Swepston v. Snell*, 499 U.S. 976 (1991). Defendant Jane Doe Prosecutor enjoys immunity from suit under § 1983 with respect to her prosecutorial activities concerning Mr. Johnson's criminal case in Boulder District Court. *See Imbler*, 424 U.S. at 420-24. A claim against a defendant who clearly is immune from suit is legally frivolous. *Neitzke*, 490 U.S. at 327. Therefore, Defendant Jane Doe Prosecutor is an inappropriate party to this action based on absolute immunity.

Finally, Mr. Johnson asserts supplemental jurisdiction over claims four, five, six, seven, and eight, which appear to allege a number of violations of Colorado state law. The Court declines to exercise supplemental jurisdiction over Mr. Johnson's state law claims because the constitutional claims over which the Court has original jurisdiction will be dismissed. *See* 28 U.S.C. § 1367(c)(3). Accordingly, it is

ORDERED that the Court declines to exercise supplemental jurisdiction over Mr.

Johnson's state law claims.  It is

FURTHER ORDERED that the Second Amended Complaint and Action are

dismissed as legally frivolous.  It is

FURTHER ORDERED that all pending motions are denied as moot.

DATED at Denver, Colorado, this __18th__ day of __October__, 2010.

BY THE COURT:


__s/Philip A. Brimmer__
PHILIP A. BRIMMER
United States District Judge, for
ZITA LEESON WEINSHIENK, Senior Judge
United States District Court

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**CERTIFICATE OF MAILING**

Civil Action No. 10-cv-01094-BNB

Larry E. Johnson
2985 E. Aurora Ave. #328
Boulder, CO 80303


    I hereby certify that I have mailed a copy of the **ORDER AND JUDGMENT** to the
above-named individuals on 10 18 10

                                                GREGORY C. LANGHAM, CLERK

                             By:                                   
                                            Deputy Clerk